UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN THE MATTER OF GIS MARINE,            CIVIL ACTION
LLC AS OWNER OF THE M/V
GIS-CRUSADER, PETITIONING               NO. 14-1018 c/w 15-1133
FOR EXONERATION FROM OR
LIMITATION OF LIABILITY                 SECTION "B"(1)

## ORDER AND REASONS

Before the Court is GIS Marine, L.L.C.'s ("GIS" or "Petitioner") Motion for Partial Summary Judgment seeking dismissal of Claimant Michael Cheese's ("Cheese" or "Claimant") claim for attorneys' fees and punitive damages associated with the alleged failure to provide maintenance and cure. Rec. Doc. 73. Cheese timely filed an opposition memorandum. Rec. Doc. 77. Thereafter, the Court granted leave for GIS to file a reply memorandum. Rec. Doc. 85. For the reasons outlined below,

**IT IS ORDERED** that the Motion is **GRANTED**.

I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises out of an incident aboard the M/V GIS Crusader on April 7, 2015 in which Seaman Cheese suffered catastrophic injuries while working as a deckhand. Rec. Docs. 1 at 1; 77 at 1. On May 2, 2014, GIS filed a complaint for exoneration from or limitation of liability as the owner of the M/V GIS Crusader. Rec. Doc. 1 at 1. Thereafter, on September 4, 2014, Cheese filed an Answer and Claim in response to GIS Marine's Complaint seeking compensatory and punitive damages for himself

1

and his minor son as a result of his injuries. *See* Rec. Doc. 11. Approximately seven months later, Cheese filed a separate Complaint in this Court against GIS and other defendants under the Jones Act and general maritime law also seeking damages on behalf of himself and his minor son. The two cases were later consolidated into the present action. *See* Rec. Doc. 23. GIS now challenges Cheese's claim for attorneys' fees and punitive damages related to his claims for maintenance and cure.

## II.  **THE PARTIES' CONTENTIONS**

In its Motion for Partial Summary Judgment, GIS urges this Court to dismiss Cheese's claim for attorney's fees and punitive damages associated with the alleged arbitrary and capricious failure to pay maintenance and cure. Rec. Doc. 73 at 1. As a seaman's right to attorneys' fees and punitive damages arises only out of a willful and wanton disregard of a duty to pay maintenance and cure benefits, GIS maintains that it cannot be liable because it is currently up-to-date on all such payments. Rec. Doc. 73-1 at 3-4. Moreover, GIS contends that Cheese has failed to submit any evidence in support of its claim that GIS has arbitrarily and capriciously failed to pay maintenance and cure. Rec. Doc. 85 at 1. Accordingly, GIS claims there is no genuine issue of material fact preventing summary judgment.

Seaman Cheese opposes summary judgment on the ground that GIS has not met its cure obligations because it has failed to take all

2

reasonable steps to ensure Cheese receives proper medical care and treatment and failed to reimburse all medical expenses. Rec. Doc. 79 at 5. Claimant argues that Petitioner's "laxness" in investigating claims subjects it to punitive damages and attorneys' fees. *Id.* at 6. Cheese's opposition argues that such laxness led to GIS's refusal to approve necessary treatments and refusal to pay certain medical bills. *Id.* at 8-11. Consequently, Cheese maintains that summary judgment is inappropriate.

### III. **LAW AND ANALYSIS**

Under relevant Supreme Court precedent, a seaman is permitted to seek punitive damages for his employer's "willful and wanton" disregard of maintenance and cure obligations, *Atlantic Sounding Co., Inc v. Townsend*, 557 U.S. 404, 424-25 (2009), as well as attorneys' fees for his employer's "willful and persistent" refusal to pay maintenance and cure. *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962). Accordingly, the threshold question for determining whether a seaman is entitled to punitive damages or attorneys' fees is whether the employer willfully refused to provide maintenance and cure benefits.

"Maintenance and cure is an ancient duty imposed upon a shipowner to provide for a seamen [sic] who becomes ill or injured during his service to the ship. This duty is implied in maritime employment contracts between the seaman and his employer and is not premised on the fault or negligence of the shipowner." *Silmon*

*v. Can Do II, Inc.*, 89 F.3d 240, 242 (5th Cir. 1996) (citing *Aguilar v. Standard Oil Co. of New Jersey*, 318 U.S. 724, 730 (1943)). Maintenance is meant to cover the reasonable costs of food and lodging incurred by the seaman while ashore during the period of his disability. *Caulfield v. AC & D Marine, Inc.*, 633 F.2d 1129, 1131 (5th Cir. 1981). Cure refers to the employer's obligation to provide for the injured seaman's medical care. *Id.* at 1132. Here, Seaman Cheese only alleges that GIS failed to provide cure—i.e., to pay his medical expenses and approve certain treatments. *See* Rec. Doc. 79.

While GIS claims that they have consistently provided maintenance and cure benefits to Cheese, he points to three medical bills with allegedly outstanding balances as well as the deposition testimony of his mother stating that she has unpaid bills. *Id*. at 2-3, 12. In response, GIS submitted evidence demonstrating that two of the medical bills proffered by Cheese have been settled by GIS, meaning no outstanding balance exists. *See* Rec. Doc. 85-1 at 10-11, 18-19.[1] Further, GIS maintains that the other bill that allegedly remains unpaid has yet to be submitted for payment by the Cheese family. Rec. Doc. 85 at 3. In support of this assertion, GIS points the Court's attention towards an affidavit from Tami Johnson, the person assigned to coordinate payments of benefits to

---

[1] While Cheese contends that one of these bills has gone into collection, Rec. Doc. 79 at 4, the check demonstrating payment in full post-dates that collections notice. Rec. Doc. 85-1 at 19.

4

Cheese, as well as the deposition testimony of Cheese's mother. Rec. Doc. 85-1 at 2 ("The Memorial Pathology Consultants invoice at issue has never been submitted to GIS for payment by the medical provider, Mr. Cheese, or counsel for Mr. Cheese."); *id*. at 15 (stating in deposition testimony that she, Mrs. Yolanda Cheese, just stacks up the bills she receives for her son and does not send them on to GIS, nor is she sure whether her husband provides them to Cheese' attorney for forwarding). Cheese provides no evidence to counter GIS Marine's arguments regarding any of these bills. Accordingly, this Court finds that Cheese fails to raise a genuine issue of material fact as to whether GIS willfully refused to meet its cure obligations with respect to the medical bills.

However, Cheese also argues that GIS refused to approve certain necessary treatments in violation of its obligation to provide cure. Rec. Doc. 79 at 2-4. First, Cheese claims that GIS did not timely approve his request to undergo an epidural steroid injection ("ESI"). *Id*. at 2-3. Second, he maintains that GIS wholly refused to approve his request to undergo a nerve conduction study. *Id*. at 3-4. First, with respect to the ESI injections, GIS approved the treatment on October 12, 2015, just four days after Cheese's counsel requested approval for the treatment. *See id*. at 2; Rec. Doc. 85-1 at 2. Accordingly, they did not willfully refuse approval of that treatment. Moreover, a four-day delay in approving the treatment is not unreasonable under the circumstances. In regards

5

to the nerve conduction ceremony, GIS presents evidence that, when Claimant first requested approval for the treatment, it asked for a copy of Cheese's primary care physician's report and referral for the nerve conduction treatment in order to investigate the medical necessity of the treatment through an independent medical examination. Rec. Doc. 85 at 6; 85-1 at 3. However, Cheese and his counsel have still yet to provide that information. *Id.* Cheese presents no evidence to rebut Tami Johnson's affidavit stating that the information was never provided. Accordingly, this Court finds that GIS Marine has not willfully refused to approve necessary medical treatment. Instead, it is Cheese and his counsel who have not followed through with reasonable requests by GIS to ensure that Cheese receives the treatment he requests.

IV. **CONCLUSION**

For the reasons outlined above, this Court concludes that Cheese has failed to show that GIS Marine has at any point willfully refused to provide maintenance and cure. Thus, there is no basis for attorneys' fees or punitive damages. Accordingly,

**IT IS ORDERED** that the motion for partial summary judgment is **GRANTED**.

New Orleans, Louisiana, this 26th day of May, 2016.

_____
UNITED STATES DISTRICT JUDGE